UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTOPHER EINECKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | )    No.: 20-cv-4165-MMM |
| | ) |
| . EK, et al., | ) |
| | ) |
| **Defendants.** | ) |

**MERIT REVIEW ORDER**

Plaintiff, proceeding *pro se*, pursues a § 1983 action for deliberate indifference to his serious medical needs at the Hill ("Hill") and Big Muddy ("Big Muddy") Correctional Centers. The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiff was at Hill on June 19, 2019, when he developed a severe sore throat, fever, earache, lightheadedness, and vomiting. Plaintiff claimed he was unable to move and asked another inmate, Mr. Jenkins, to contact Defendant Nurse Janice who was passing medications. Mr. Jenkins did so, with Defendant Janice indicating that she could not do anything while

passing medications. She recommended that Plaintiff write a sick call slip to be given to her. Plaintiff did so, marking the slip as an "emergency."

On June 21, 2019, Plaintiff was still in severe pain and had not been seen. He filled out another sick call slip and placed it in the healthcare box. He asked an unidentified second shift officer to call the hip healthcare unit, and the officer refused to do so. On June 22, 2019, Plaintiff's earache was so severe that it caused migraines and vomiting. Correctional staff called the healthcare unit on his behalf and were advised that Plaintiff was to turn in another sick call slip. Plaintiff did so, without result.

On June 23, 2019, Plaintiff told Lieutenant Lisa Williams, not a party, that his symptoms had remained unaddressed for four days. Lieutenant Williams told Plaintiff to fill out a sick call slip which she would personally deliver to the healthcare unit. Plaintiff did so, also writing several grievances. While in chow line later that day, Plaintiff apprised Sergeant Shotts of the situation. Sergeant Shotts called the healthcare unit and told Plaintiff to report there. Upon arrival in the healthcare unit, Plaintiff was seen by an unidentified Jane Doe Nurse. The Doe Defendant examined Plaintiff and provided him medications. She advised that if his symptoms did not improve, he was to put in another sick call request.

Plaintiff was called back to the healthcare unit on June 24, 2019 and seen by Defendant Nurse Lopes. Defendant Lopes believed that Plaintiff might have strep throat and prescribed a seven-day course of an antibiotic, Amoxicillin. Defendant provided Plaintiff a blister pack with a five-day supply, indicating he would be given the remainder in a few days through med pick-up.

Plaintiff returned to the healthcare unit on June 26, 2019, asserting that the hearing in his right ear was deteriorating. He noted, also, that he had not received the final two-days' worth of antibiotics. Plaintiff claims that he never received the remainder and that he has suffered

significant hearing loss in his right ear. He does not, however, identify the individual to whom he made these complaints.

On July 1, 2019, Plaintiff was seen by Defendant Nurse Julie, who noted that Plaintiff's right ear was red and engorged. Defendant Julie prescribed a different antibiotic, Augmentin. Plaintiff was prescribed and given the entire seven-day course in a blister pack.

On July 2, 2019, Plaintiff was told he was being transferred to the Big Muddy Correctional Center the following day ("Big Muddy"). Plaintiff was not allowed to take the Augmentin on the transport bus, so he packed it in his property box. Plaintiff arrived at Big Muddy on July 3, 2019 and was seen by Nurse Williams for a medical intake. Plaintiff told Nurse Williams of his issues and his need for the antibiotic. The Nurse told him that the property officer would send the medications to the healthcare unit where he could receive them the following day.

Plaintiff received his property the following day and his medications were not amongst them. Plaintiff followed-up and was told, as previously indicated by Nurse Williams, that the medications had been sent to the healthcare unit. Plaintiff submitted a slip that day, requesting the antibiotics. Plaintiff did not receive the antibiotics and was not seen in the health care unit until July 11, 2019. On that date, a Jane Doe nurse, not named as a party, noted redness and bulging of Plaintiff's right eardrum. The Nurse contacted an unidentified physician who examined Plaintiff that day. The John Doe physician corroborated the Nurse's findings but indicated, that after eight days, Plaintiff did not need the antibiotics. He merely prescribed Tylenol.

Plaintiff had continued pain in his ear and, on August 22, 2019, submitted a request for more pain medication. Plaintiff was seen on August 24, 2019, by an unidentified individual and

issued a three-day supply of Tylenol. Plaintiff was seen on several subsequent occasions for renewal of the Tylenol prescription. Plaintiff complains that despite the continued need for pain medication, he was only prescribed a three-day supply at a time. Here, again, Plaintiff does not indicate whether he is asserting that this was deliberate indifference or whom he holds responsible.

On October 20, 2019, Plaintiff was seen by Physician's Assistant, Defendant Gerst. Defendant Gerst prescribed a10-day supply of amoxicillin which finally ease the pain and improved the hearing loss to an extent. On November 25, 2019, Plaintiff was seen by an unidentified outside audiologist who recommended a hearing aid for the right ear. Dr. Larson, a Big Muddy physician, submitted a request for the hearing aid. On January 23, 2020, the request was approved by Healthcare Administrator Debbie Isaacs. As of the writing of the complaint, however, Plaintiff had not received the hearing aid.

While Plaintiff might otherwise allege colorable claims of deliberate indifference, he does not clearly indicate which Defendants he holds liable. Plaintiff has named Dr. Ek, the Hill Medical Director, but makes no mention of him in the complaint. It is unclear whether he is pleading that Nurse Janice was deliberately indifferent in not seeing him on June 19, 2019 or whether he holds her responsible for his not being seen until June 23, 2019. It is also unclear as to why Plaintiff named Nurse Ashley Lopes. Plaintiff pleads only that Defendant Lopes saw him on June 24, 2019, determined he might have strep throat, and prescribed him a seven-day course of Amoxicillin. The Court cannot discern any deliberate indifference on Defendant Lopes's part, particularly, as Plaintiff does not claim that he made subsequent, unaddressed complaints to her.

Plaintiff also asserts that on June 26, 2019, he informed someone of the loss of hearing in his right ear and the failure to receive the final two-days' worth of antibiotics. He does not,

however, provide any information as to this individual. As a result, the individual's gender or status as an officer or medical staff member is unknown. Plaintiff does not, in fact, affirmatively assert a deliberate indifference claim against this individual.

Plaintiff's claims are even less clear as to the Big Muddy Defendants. Plaintiff names Dr. Larson and Healthcare Administrator Debbie Isaacs. However, he pleads only that Dr. Larson submitted a request for Plaintiff to be provided a hearing aid and that Defendant Isaacs approved the request. It is not clear why they are named as Defendants. If Plaintiff means to allege that one or both is at fault for his not receiving the hearing aid, he needs to plead facts in support. This claim, however, cannot proceed here as it is not related to the claims that the other putative Defendants were deliberately indifferent to Plaintiff's pain, and failed to provide him necessary antibiotic treatment. *See George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007), "[u]nrelated claims against different defendants belong in different suits." In other words, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." "Again, defendants are properly joined in a single action only if they are parties to a single transaction or occurrence common to all defendants, and the claims against them involve a common question of fact or law." *Ghashiyah v. Frank*, No. 05-0766, 2008 WL 680203, at *2 (E.D. Wis. Mar. 10, 2008).

Plaintiff also names Physician's Assistant Gerst, pleading only that this Defendant provided him a ten-day supply of antibiotics which finally improved his symptoms. It is furthermore not clear whether Plaintiff seeks to allege a deliberate indifference claim against Nurse Williams, who did the medical intake screening at Big Muddy on July 3, 2019.

This complaint cannot proceed as it would result in the Court "guessing" as to which individuals are meant to be Defendants and the nature of the claims which are to be construed against them. Plaintiff will be given an opportunity, however, to file an amended pleading.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's complaint is dismissed. Plaintiff will have 30 days in which to file an amended complaint. It is to be captioned "Amended Complaint" and is to include all of Plaintiff's claims, without reference to a prior pleading. The amended complaint must clearly state the claim being alleged against each particular Defendant. Failure to file an amended complaint will result in the dismissal of this action.

2) Plaintiff filed a petition to proceed in forma pauperis [3], asserting poverty. His prison trust fund ledgers, however, document a balance of $1,492.96. [3] is DENIED. Plaintiff will have 30 days in which to pay the full $402 filing fee.

3) Plaintiff has filed [5], requesting the recruitment of *pro bono* counsel. Plaintiff provides a single declination letter from an attorney and does not, therefore, document a good faith effort to secure counsel on his own. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). [5] is DENIED. In the event that Plaintiff renews his motion for appointment of counsel, he is to provide copies of the letters sent to, and received from, prospective counsel.

4) Plaintiff's motions for status [6] and [7] are rendered MOOT by this order.

 12/2/2020  
ENTERED

 s/Michael M. Mihm  
MICHAEL M. MIHM  
UNITED STATES DISTRICT JUDGE