E-FILED
Monday, 17 May, 2021  10:50:35 AM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CHRISTOPHER EINECKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No.: 20-cv-4165-MMM** |
| | ) | |
| **. EK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MERIT REVIEW – AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, files an amended complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs at the Hill Correctional Center ("Hill") against Defendant Medical Director Dr. Ek, Warden Stephanie Dorethy, and Nurses Janice, Ashley Lopes, Jane Doe #1 and Jane Doe #2. Plaintiff also complains of Defendants at the Big Muddy Correctional Center ("Big Muddy"); asserting claims against Healthcare Administrator Debbie Isaacs, Dr. Dennis Larson, Physician's Assistant Gerst, and Nurse Williams.

The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the amended complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiff was at Hill on June 19, 2019, when he developed a severe sore throat, fever, earache, lightheadedness, and vomiting. Plaintiff claimed he was unable to move and asked another inmate, Mr. Jenkins, to contact Defendant Nurse Janice who was passing medications. Mr. Jenkins did so, with Defendant Janice indicating that she could not do anything during med pass. She recommended that Plaintiff write a sick call slip. Plaintiff's cellmate and another inmate did so, marking it an "emergency," and returning it to Defendant Nurse Janice.

On June 21, 2019, Plaintiff continued to suffer severe pain and still had not been seen. He filled out another emergency sick call slip and placed it in the healthcare box. On June 22, 2019, Plaintiff submitted another sick call slip, his fourth in three days.

On June 23, 2019, Plaintiff complained Sergeant Shotts who called the healthcare unit and told Plaintiff to report there. Upon arrival in the healthcare unit, Plaintiff was seen by Defendant Nurse Jane Doe #1. Doe Defendant #1 examined Plaintiff, noting redness and engorgement of his right ear. She provided him Tylenol, ibuprofen, Guaifenesin, and another medication which cannot be deciphered.[1] Defendant told Plaintiff that if this did not address his symptoms, he was to put in another sick call slip. Plaintiff asserts that Defendant Jane Doe #1 did not document this visit, so that Plaintiff would not be charged a co-payment.

Plaintiff was called back to the healthcare unit on June 24, 2019 and seen by Defendant Nurse Lopes. Defendant Lopes noted that the prior visit by Doe #1 was not recorded. Defendant Lopes wrote an incident report and recommended that Plaintiff file a grievance. Defendant Lopes spoke with Defendant Dr. Ek who ordered a seven-day course of Amoxicillin, an antibiotic. Defendant Lopes provided Plaintiff a blister pack with a five-day supply, indicating he would be given the remainder in a few days through med pick-up.

---

[1] Guaifenesin is used to reduce chest congestion caused by the common cold, infections, or allergies. https://www.Guaifenesin Uses, Dosage & Side Effects - Drugs.com.

2

Plaintiff asserts that the antibiotic was not effective, and he continued to experience severe pain, and his hearing continued to deteriorate. On June 26, 2019, he submitted another sick call slip. On June 28, 2019, Plaintiff finished the last of the five-day supply of antibiotic and never received the additional two days' supply.

On July 1, 2019, Plaintiff was called to the healthcare unit in response to the June 26, 2019 sick call slip. Plaintiff was seen by Defendant Nurse Julie, telling her that the right ear pain continued and had extended to the left ear. Defendant Julie spoke with Defendant Ek who ordered another antibiotic, Augmentin. Defendant Julie provided Plaintiff with a full seven-day supply of the Augmentin.

On July 2, 2019, Plaintiff was told he was being transferred to Big Muddy the following day. Plaintiff was informed by Officer Powell, not a party, that he could not take the medication with him on the transport bus. Officer Powell recommended that Plaintiff take a dose prior to getting on the bus and to pack the remainder in his property box.

Plaintiff arrived at Big Muddy on July 3, 2019, where he was seen by Defendant Nurse Williams for a medical intake. Defendant Williams told Plaintiff that they did not have his antibiotic in the healthcare unit, and he would get it the following day in his property box. When Plaintiff received his property box, however, the antibiotic was not there.

Plaintiff did not receive the antibiotic, and he was not seen in the health care unit until July 11, 2019. On that date, unidentified nurse, not named as a party, noted redness and bulging of Plaintiff's right eardrum. The Nurse contacted Dr. Larson who examined Plaintiff but did not provide him another antibiotic as he had already been off antibiotics for eight days. Plaintiff is critical of this, asserting that with his loss of hearing and constant extreme pain he should have been given something other than Tylenol.

3

On October 22, 2019, Plaintiff was seen by Physician's Assistant, Defendant Gerst, telling him that the ear pain was subsiding. On November 25, 2019, Plaintiff was seen by an unidentified outside audiologist who recommended a hearing aid for the right ear. Dr. Larson submitted the request, and on January 23, 2020, it was approved by Defendant Healthcare Administrator Debbie Isaacs. Plaintiff did not receive the hearing aid until October 14, 2020.

Plaintiff claims that after returning from a furlough, he asked for hearing aid cleaning equipment. In response, he only received a dental cup. Plaintiff also complains that he had to wait two weeks to get hearing aid batteries.

### ANALYSIS

Plaintiff was previously instructed that his allegations arising at Big Muddy were mis-joined with those arising at Hill. Despite the Court's instruction, Plaintiff reasserts claims against both groups of Defendants. "Federal Rule of Civil Procedure 20 permits plaintiffs to join together in one lawsuit if they assert claims 'arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to these persons will arise in the action." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." Defendants are properly joined in a lawsuit only if they are parties to a single transaction or occurrence common to all defendants, and the claims against them involve a common question of fact or law. *Ghashiyah v. Frank*, No. 05-0766, 2008 WL 680203, at *1 (E.D. Wis. Mar. 10, 2008).

The events at Hill and Big Muddy did not comprise a single transaction as they occurred some time apart, at different stages in Plaintiff's illness, and involved unrelated individuals. In addition, the claims at Big Muddy largely concerned delays in providing Plaintiff a hearing aid

4

and the equipment with which to clean it, events which were not at issue at Hill. The claims against the Big Muddy Defendants are DISMISSED, without prejudice to Plaintiff filing them in a new action with responsibility for the attendant filing fee. Defendants Williams, Isaacs and Larson are DISMISSED. As Plaintiff does not replead against Defendant Gerst, PA, this individual is also dismissed.

Plaintiff has alleged against Hill Defendant Ek that on June 24, 2019, Defendant Lopes spoke with him, and received an order for a seven-day course of amoxicillin. He also pleads that on July 1, 2019, Defendant Nurse Julie spoke with Defendant Ek, indicating that Plaintiff symptoms had not abated. At that time, Defendant Ek ordered a different antibiotic, Augmentin. Plaintiff does not plead that he ever personally spoke with Defendant Ek, and does not plead that Defendant was aware that the initially prescribed antibiotic had not address his symptoms and that he continued to experience pain.

"In order to prevail on a deliberate indifference claim, a plaintiff must show (1) that his condition was 'objectively, sufficiently serious' and (2) that the 'prison officials acted with a sufficiently culpable state of mind…With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008)(quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)); *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir.1998). A defendant must have "actually kn[own] of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (internal citations omitted).

Plaintiff does not plead that Defendant Ek was aware of his continued symptoms and failed to take action. Rather, he characterizes his complaints as alleging that Defendant Ek was deliberately indifferent for prescribing "seven days of amoxicillin via phone…" failing "to ensure his subordinate followed his instructions…" and failing "to follow up to ensure I was OK." Plaintiff offers nothing to support that ordering the administration of an antibiotic over the phone approaches the culpable state of mind necessary for deliberate indifference.

In addition, as there is no respondeat superior under §1983, Defendant Ek does not become liable for a nurse's alleged failure to follow his instructions. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Plaintiff's claim that Defendant did not "follow-up" does not state a deliberate indifference claim where there is no allegation that Defendant knew, prior to July 1, 2019, that the treatment he offered was ineffective. Defendant Ek is DISMISSED.

Plaintiff asserts that Defendant Nurse Janice was told of his symptoms on June 19, 2019 and was handed a sick call slip so that Plaintiff could be scheduled to be seen. Despite this, Defendant Janice apparently took no action and Plaintiff was not seen until June 23, 2019, though in pain all the while. This is sufficient to assert a deliberate indifference claim against Defendant Janice.

Plaintiff fails to plead deliberate indifference, however, as to Nurse Jane Doe #1 by whom he was seen on June 23, 2019. On that date, Defendant Doe #1 gave Plaintiff Tylenol, ibuprofen, Guaifenesin and another medication. She also instructed him to submit a sick call slip if these medications did not work. Plaintiff does not claim to have had any further interaction with Defendant Jane Doe #1 and does not allege that she was aware that his symptoms persisted, so as to have been deliberately indifferent in response.

Plaintiff asserts only that Doe #1 committed "medical negligence" by failing to follow IDOC policy. While Plaintiff does not identify the policy to which he is referring, the Court presumes this concerns Defendant's failure to record the June 23, 2019 encounter into the medical record. The failure to follow an internal policy, however, does not state a constitutional claim. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Moreover, Plaintiff does not allege that Defendant's failure to make a record of the visit caused him harm.

Plaintiff also alleges that Defendant Doe #1 did not undertake any testing. He does not indicate, however, what testing he believed necessary, or assert that the nurse had the authority to order the testing. *See McGill v. Duckworth*, 944 F.2d 344, 348–49 (7th Cir. 1991) (plaintiffs may not "tax employees of the prison system with the effects of circumstances beyond their control.") Defendant Nurse Jane Doe #1 is DISMISSED.

Plaintiff alleges as to Defendant Nurse Lopes that, when she saw Plaintiff on June 24, 2019, she called Defendant Dr. Ek and received an order for a seven-date course of amoxicillin. Defendant provided Plaintiff with a five-day supply, indicating that he could obtain the remaining doses through med pick-up. While Plaintiff did not receive the remaining doses, he does not allege that Defendant Lopes was made aware of this. As result, he fails to plead deliberate indifference against this individual.

As to Nurse Julie, Plaintiff alleged that on July 1, 2019, he complained to Nurse Julie of right ear pain which was extending into the left ear. Defendant Julie responded to Plaintiff's complaints by calling Dr. Ek who ordered a seven-day course of a different antibiotic. Plaintiff pleads that Defendant Julie provided him with a full seven-day supply of the Augmentin and does not identify in what way she was deliberately indifferent to him. Defendant Nurse Julie is DISMISSED.

7

Plaintiff also names a Nurse Jane Doe #2, apparently asserting a claim for this individual's denial of his grievances and failure to "investigate" and "make an informed judgment" regarding his complaints. Section 1983 limits liability to public employees "for their own misdeeds, and not for anyone else's." *See George v. Smith,* 507 F.3d 605, 609–10 (7th Cir.2007) ("[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."); *Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir.2006).

Plaintiff alleges against Defendant Warden Dorethy that, although she allowed one of his grievances as an emergency, she did not ensure that medical staff followed-up appropriately. It is not the case, however, that "anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself…Only persons who cause or participate in the violations are responsible.") *George v*, 507 F.3d at 609. *See also, Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). "[T]he alleged mishandling of [Plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." Defendant Dorethy is DISMISSED as well.

**IT IS THEREFORE ORDERED:**

1.     This case shall proceed solely on the claims of deliberate indifference against Defendant Nurse Janice identified herein. All other claims and all other Defendants are DISMISSED. Plaintiff will have a final opportunity, within 30 days, to file a second amended complaint, should he wish. It is to be captioned "Second Amended Complaint" and is to include all of Plaintiff's claims, without reference to a prior pleading.

2.      The Clerk is directed to send Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

3.      If Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

4.      Defendant shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

5.      Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court, and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

6.      Once counsel has appeared for Defendant, Plaintiff need not send copies of filings to Defendant or to Defendant's counsel. Instead, the Clerk will file Plaintiff's document

electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendant is not available, Plaintiff will be notified and instructed accordingly.

7.      Counsel for Defendant is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendant shall arrange the time for the depositions.

8.      Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

 1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES;

 2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES: AND,

 3) ENTER THE STANDARD QUALIFIED PROTECTIVE ORDER PURSUANT TO THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT.

 LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

ENTERED:   5/17/2021

     s/Michael M. Mihm
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE