UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| CHRISTOPHER EINECKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 20-cv-4165 |
| | ) | |
| JANICE TOWNSEND, | ) | |
| | ) | |
| Defendant. | ) | |

**SUMMARY JUDGMENT ORDER**

Plaintiff, proceeding pro se and presently incarcerated at Big Muddy Correctional Center, sued under 42 U.S.C. § 1983 alleging an Eighth Amendment claim for deliberate indifference to a serious medical need. The matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. 66). Plaintiff has filed a Response (Doc. 78) and Defendant a Reply (Doc. 79). The summary judgment motion is granted.

**SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### FACTS

The Parties

Plaintiff was incarcerated at Hill Correctional Center at all relevant times. Ex. B at 11:14-20.[1] He is not a medical professional. *Id.* at 60:22-23.

Defendant Licensed Practical Nurse Janice Townsend was employed as an LPN at Hill at all relevant times. Ex. C at ¶ 2. Her duties occasionally included dispensing medication to inmates during med pass. *Id.* at ¶ 4. Her duties also included observing, recording, and reporting symptoms, reactions, and changes in the condition of all patients, and carrying out designated nursing and treatment protocols. (Doc. 78) at 40.

Plaintiff's Claim

Plaintiff alleges Townsend exhibited deliberate indifference to his serious medical needs by telling him to submit a sick call request instead of ensuring he received immediate medical care. *Id.* Plaintiff's allegations against Townsend are limited to her non-response to his medical request on June 19, 2019. Ex. B at 53:9-12.

Plaintiff Falls Ill

Plaintiff fell ill on June 19, and at about 7 or 8 o'clock p.m. he experienced sore throat, fever, blurry vision, severe earache, and nausea. (Doc. 14) at 3. Plaintiff was

---

[1] Exhibits refer to exhibits attached to (Doc. 66) except as otherwise noted.

housed in 3 House at that time. Ex. B at 35:16-18. Plaintiff laid down on the floor outside his cell because he felt bad. Ex. B at 37. Plaintiff later needed help into his bunk. Ex. B at 40-41. Plaintiff then woke up an hour later and showered without assistance. *Id.* at 41-42. Plaintiff's cellmate then assisted Plaintiff into the top bunk. *Id.*

Defendant's Knowledge of Plaintiff's Condition

Defendant conducted medication pass at some locations at Hill on June 19. When she conducted med pass, she would be in the med pass room and inmates who needed medicine came to her to receive it. She did not tour the cell house. While conducting med pass, if an inmate told her that another inmate needed medical attention, she would refer them to sign up for sick call. If they were experiencing an emergency, they could notify a correctional officer in the cell house to call for emergency care because she would not have emergency response equipment with her while conducting med pass. (Doc. 78) at 4 ¶ 12. To ensure each inmate receives prescribed medication, the nursing staff conducting med pass cannot treat inmates for non-emergency issues during med pass. Ex. C at ¶ 7. Corrections staff notified of an emergency can call a Code 3 and an inmate will receive emergency care. *Id.* at ¶ 8.

There is no evidence in the summary judgment record that Townsend conducted med pass at 3 House on June 19. Plaintiff did not see or speak with Townsend on June 19. Ex. B at 39:8-10. Plaintiff believes two other inmates spoke to her on his behalf. (Doc. 14) at ¶¶ 16-17.  Plaintiff produced three affidavits from fellow inmates who he asserts asked Townsend for help on his behalf on June 19. None of these three witnesses

identify Townsend as the nurse they spoke to. Ex. D at 5-7. Plaintiff did not see his witnesses speak to Townsend. Ex. B at 39:11-14.

Townsend did not make any attempt to assess Plaintiff on June 19. (Doc. 78) at 10 ¶ 12. Defendant reiterates that she did not see Plaintiff that day and that she did not know of Plaintiff's condition. Ex. B at 39:8-14.

Plaintiff's Friends are Told to File a Sick Pass Request

The med pass nurse that Plaintiff's friends spoke to on June 19 told them Plaintiff would need to file a sick pass request. (Doc. 78) at 38-39.

Plaintiff's Other Available Option to Seek Medical Care

Correctional officers toured Plaintiff's housing unit throughout the day. Ex. B at 43:3-13. An inmate may get the attention of an officer by calling out from their cell. Ex. B at 43:19-24. Plaintiff did not call for a correctional officer or request aid from a correctional officer on June 19. Ex. B at 44:6-16. Plaintiff spoke to an officer about his illness the following day, June 20. Ex. B at 46:5-19.

Plaintiff Receives Medical Care

According to Plaintiff's Amended Complaint he was seen at healthcare on June 23 by an unnamed nurse. She provided Tylenol, ibuprofen, the decongestant Guaifenesin, and another medication, and told him to request sick call again if symptoms persisted. (Doc. 78) at 15.

Plaintiff was seen on June 24 by Nurse Ashley Lopez for cold symptoms. According to Lopez's note Plaintiff complained of sore throat, difficulty swallowing, headache, earache, and feeling like he was "burning up." Plaintiff's observed

temperature that day was 97.6 Fahrenheit. His lungs were clear and his nose was not red. Lopez observed redness and pustules at the back of Plaintiff's throat and noted redness in his right ear canal. She instructed him to increase fluid intake. Dr. Ek prescribed Plaintiff the antibiotic Amoxicillin 500 mg twice daily for 7 days that same day. Ex. A at Bates 32-33, 247. Amoxicillin is used to treat bacterial infections including those of the lungs, airways, ear, nose, throat, urinary tract, and skin. Ex. C at ¶ 19.

Plaintiff was seen on July 1 for cold symptoms, including cough, sore throat, ear pain, and no hearing in right ear. Plaintiff's temperature was 97.8. Plaintiff's throat and ear canals were red and inflamed. The nurse relayed her observations to Dr. Ek, who ordered the additional antibiotic Augmentin 875 mg twice daily for 7 days. Plaintiff received the Augmentin that same day. Ex. A at Bates 37-38; 247.

### Plaintiff is Transferred to Big Muddy

On July 3, Plaintiff was transferred to Big Muddy Correctional Center. Plaintiff's transfer summary says that treatment was in place for a sore throat. Ex. A at Bates 39; 247. Plaintiff's Amended Complaint asserts his Amoxicillin was lost or confiscated during his transfer to Big Muddy. (Doc. 78) at 17-18.

### Plaintiff's Hearing Loss Causes

Mild hearing loss is a common symptom of ear infection, that usually resolves after infection clears. Ex. C at ¶ 21. Plaintiff was around firearms and gunfire when he was younger, and did not wear hearing protection. Ex. B at 62:21-24, 63:1-9. Plaintiff has never been told that he had hearing loss because of his illness in June and July 2019.

## ANALYSIS

"The Eighth Amendment proscribes deliberate indifference to serious medical needs of prisoners amounting to the unnecessary and wanton infliction of pain." *Arce v. Wexford Health Sources Inc.*, 75 F.4th 673, 678–79 (7th Cir. 2023) (internal quotation marks omitted). To prevail on such a claim, a plaintiff must prove: (1) the risk to the inmate is objectively serious, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) the official has a state of mind that is deliberately indifferent to the inmate's health or safety. *Id.* "Deliberate indifference" means an official "knows of and disregards an excessive risk to an inmate's health or safety." *Farmer*, 511 U.S. at 837. To be culpable, the official must: (1) be aware of facts from which the inference can be drawn that a substantial risk of harm exists; and (2) must also draw the inference. *Id.* Deliberate indifference is more than simple ignorance; it requires a culpable state of mind, akin to criminal recklessness. *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006).

Here, the Court finds as follows.

**Townsend was not personally involved.** "[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (quoting *Palmer v. Marion Cnty*, 327 F.3d 588, 594 (7th Cir. 2003).

Plaintiff has put forth no evidence that Townsend was personally involved in denying him medical care on June 19. Plaintiff never spoke to Townsend. Plaintiff's witnesses assert that they spoke to *a nurse*, but they never identify Townsend as the nurse they spoke to. Plaintiff's affidavit states that these witnesses spoke to Townsend,

(Doc. 78) at 10 ¶ 10, but Plaintiff has not established he has personal knowledge of that fact; to the contrary, it is undisputed that he does *not* have personal knowledge to support that fact. *E.g.*, Ex. B at 39:11-14. While Townsend acknowledged she performed med pass in some areas of the prison on June 19, Plaintiff's assertion that she was the nurse that performed med pass in 3 House is supported only by speculation.

Because Plaintiff has provided no admissible evidence that Townsend was personally involved in his care, Townsend is entitled to summary judgment. *Lee v. Ippel*, No. 22-2711, 2023 WL 5925907, at *2 (7th Cir. Sept. 12, 2023) (citing *Johnson v. Rimmer*, 936 F.3d 695, 710–11 (7th Cir. 2019)).

**Plaintiff suffered from a "serious medical need."** Plaintiff alleges he suffered from a painful sore throat, headache, severe earache, nausea, chills and feeling like he was "burning up." Though the Seventh Circuit has noted that "the sorts of ailments for which many people who are not in prison do not seek medical attention," do not satisfy the objective element of the Eighth Amendment deliberate indifference standard, *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996), Plaintiff's illness supports a reasonable inference he faced a serious medical need. Plaintiff testified he was in extreme pain, and in the Court's experience, most persons, incarcerated or not, indeed do seek medical attention for severe pain, particularly a severely painful ear infection. Defendant's argument to the contrary is unpersuasive.

**Townsend did not culpably deny Plaintiff medical treatment.** Assuming a jury could reasonably conclude that (1) Townsend was engaged in med pass at 3 House on June 19, (2) that Plaintiff's witnesses informed her of Plaintiff's condition, and (3) that

Townsend told Plaintiff's witnesses that she could not assist him and that he would need to request a sick call pass, Townsend would still be entitled to summary judgment.

Nurses carrying out med pass are responsible for providing medications to inmates as prescribed, and that task requires the nurse's full attention. Assuming Plaintiff's friends relayed his symptoms to Townsend while she performed med pass, her response that he should submit a sick call request would be entirely consistent with her obligations. That response could not lead a reasonable jury to find Townsend culpable as needed to sustain an Eighth Amendment claim.

Courts in this District have addressed similar claims in the past:

> Plaintiff maintains each Defendant either ignored his verbal request for sick call or refused to take his written request for sick call. Nonetheless, the undisputed evidence before the Court is Plaintiff chose to speak to each of the Defendants when they were in the process of handing out medications. A job which requires staff to move promptly to ensure the appropriate medications are given to the appropriate inmates in a timely manner.
>
> … Plaintiff was not seeking care for an emergency medical condition and he did not provide any information which would suggest he needed immediate medical attention. In this situation, Courts have repeatedly held medical providers are not deliberately indifferent when they continue the job of dispensing medications rather than address individual inmate's sick call requests.

*Titus v. Melvin*, Case No. 18-1094, Doc. 142 at 24 (C.D. Ill. Mar. 26, 2021); *see also*, *e.g.*, *Stanbridge v. Wexford Health Sources, Inc., et al*, Case No. 18-4206, Doc. 100 at 12 (C.D. Ill. Oct. 5, 2020).

Even if the Court were to accept Plaintiff's allegations of Townsend's personal involvement as true, the Court would find she acted appropriately in referring Plaintiff to utilize sick call procedures for his non-emergency medical needs. *See Rankin v. Baker*,

770 F. App'x 752, 754-755 (7th Cir. 2019) (a "reasonable jury … could not find that Dr. Baker's referral to the sick-call system was blatantly inappropriate and lacked professional judgment"); *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009); *Lee v. Engleson,* 2019 WL 1044800, at *12 (N.D. Ill. March 5, 2019) (as a med pass nurse, "it is undisputed that it was not within her job responsibilities in any event to receive written sick-call requests or to evaluate or treat inmates as she passed out medication, which, she explained, would have made her job untenable.").

Plaintiff also acknowledges he could have requested assistance from correctional staff during rounds but did not do so on June 19. And Plaintiff did receive appropriate medical attention on June 23, June 24, and July 1, including over the counter and prescription medication.

On these facts, even if Townsend were personally involved as Plaintiff alleges, she would be entitled to summary judgment.

**IT IS THEREFORE ORDERED:**

1) Motion Requesting Court to Serve Defendant [74] and Motion for Extension of Time [76] – that both ask for extensions of time to respond to Defendant's summary judgment motion – are GRANTED. The Court has considered Plaintiff's Response [78].

2) Defendants' Motion for Summary Judgment [66] is GRANTED. This action is terminated.

3) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues Plaintiff wishes to present on appeal, to assist the Court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c); see also *Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the

district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

Entered this 14th day of September, 2023.

*s/Michael M. Mihm*
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE
